NELSON P. COHEN
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
222 West Seventh Avenue, #9
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov

Attorney for Defendant

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN MITCHELL,<br><br>Plaintiff,<br><br>v.<br><br>PETE GEREN, Secretary of the Army,<br><br>Defendant. | Case No. 3:05-cv-00264-JWS<br><br>**MOTION TO DISMISS, OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT** |

## I.  INTRODUCTION

Defendant, through counsel, moves to dismiss the Plaintiff's First Amended Complaint (hereinafter "Amended Complaint"), pursuant to Fed. R. Civ. P. 12(b)(6).  In the alternative, Defendant moves for summary judgment pursuant to Fed. R. Civ. P. 56.

Plaintiff, John Mitchell (hereinafter "Mitchell"), filed his original complaint on November 5, 2005, alleging seven causes of action.  On August 4, 2006, this Court granted summary judgment on six of the seven claims that Mitchell raised, including his claim for retaliatory

constructive discharge.[1]  The cause of action that remains is a claim under the Age

Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a..  Defendant filed a

Motion to Dismiss the sole remaining claim on November 20, 2006.[2]  The Court granted the

motion, but allowed the Plaintiff to amend his complaint[3], which Plaintiff has done.

Mitchell's ADEA claim should be dismissed because he never administratively raised the

age discrimination claims described in his Amended Complaint.  While the Court found that

Mitchell filed a notice with the Equal Employment Opportunity ("EEO") Office concerning

alleged discrimination on January 14, 2005, the acts that he claims were discriminatory happened

after the notice was sent.  Mitchell never amended his EEO complaint to include these events.

He did not file a second notice.  To the extent that Mitchell's amended complaint might be

construed to raise retaliation claims, those claims should be dismissed because the United States

has not waived sovereign immunity for ADEA retaliation claims.[4]

Alternatively, if the court does not dismiss Mitchell's claim, it should nonetheless grant

summary judgment on his ADEA claim because he cannot establish a *prima facie* case.  He did

not suffer an actionable adverse employment actions sufficient to support a *prima facie* case of

---

[1]  Docket 20.

[2]  Docket 24.

[3]  Docket 30.

[4]  While Mitchell has not specifically stated a separate cause of action for ADEA retaliation, Mitchell makes two cursory statements – "plaintiff suffered retaliation and harassment form his supervisors . . . ." and "[t]he allegations contained in the Notice of Proposed Removal . . . were retaliatory against plaintiff because of the lawful grievance he had presented on or about January 9, 2005." Docket 30 at  4, ¶¶ 10, 13 (which appear to raise the issue).

age discrimination. None of the decisions had a material impact upon the terms or conditions of Mitchell's employment. Furthermore, Mitchell cannot show that he was performing to the legitimate expectations of his employer because he failed to pass the Emergency Action Controllers examination and did not contact his supervisory chain as requested.

Judgment should be entered in favor of the Defendant.

## II. <u>FACTUAL BACKGROUND</u>

John Mitchell was hired by the United States Army for a civilian position as an Emergency Actions Assistant on January 11, 2004, and was assigned to the Plans and Operations Division, U.S. Army Alaska Command Center located at Fort Richardson, Alaska.[5] He was hired by Dennis Dunn, the Operations Manager of the Command Center.

On January 5, 2005, Mitchell wrote a letter addressed to the Operations Manager of USARAK complaining of workplace conditions.[6]

On January 17, 2005, Mitchell emailed a letter, dated January 14, 2005, to Sandra Martinez, the Equal Employment Opportunity Manager at Fort Richardson. Mitchell expressed his " . . . belief that Mr. Dunn is guilty of discrimination based upon my age and disability."[7] The only age related event mentioned in the letter is an alleged statement made by Dunn – "That it is pretty humiliating that at my age and with my education that I would be [sic] accept a GS-5

---

[5] Amended Complaint at 3, ¶ 7.

[6] Amended Complaint at 3-4, ¶ 9.

[7] Exhibit A, Letter Mitchell to Martinez, January 14, 2005. Mitchell has not made a claim of discrimination due to an alleged disability.

job."[8]  As explained in earlier motion practice, there is no evidence that this email was actually received by Ms. Martinez.  In any event, no action was taken on the letter and Mitchell did not file a  formal discrimination complaint with the Army.

Mitchell claims that on January 20, 2005, David Moore, his immediate supervisor, told him that he was going to start "documenting" him, adding that "Well, then maybe you're too old to work anymore."[9]

Mitchell received immunization shots on January 24 and 27 and became ill.[10]  He called in sick on January 28.  Later that day, he spoke, via conference call, to Mr. Moore and an Occupation Health Nurse, Liz Carryer.[11]  Ms. Carryer indicates that reaction to the immunization shots was normal.  Mitchell indicated to them that he would be at work the next day, January 29, 2005.[12]  Mitchell claims he told his supervisors "ahead of time" that he could not work on January 29, 2005.[13]

Mitchell did not come to work on January 29.  Mitchell was supposed to report to work at 0600 on January 29, 2005.[14]  Mitchell told Moore when he called Mitchell after 0900 that he had

---

[8]  Id.

[9]  Exhibit B, Mitchell Affidavit, December 19, 2006 at p. 3, ¶ 7a.

[10]  Amended Complaint p. 4, ¶ 12; Exhibit B, Mitchell Affidavit, December 19, 2006, p. 2, ¶ 5.

[11]  Exhibit C, Carryer Memo; Exhibit D, Moore Memorandum.

[12]  Id.

[13]  Id.

[14]  Exhibit E, Memorandum from Dunn to Mitchell, February 2, 2005.

called into the Command Center to let them know he would not be at work that day, but Moore

reviewed the Command Center audio call log and did not find any call from Mitchell.[15]

Mitchell returned to work on February 2, 2005, to take the Emergency Action Controller

Qualification Examination.[16]  He failed the exam.[17]  Command Center personnel had been

informed of the test date the previous month.[18]  All Emergency Action Controllers were required

to take and pass this exam as a condition of their employment.[19]  When Mitchell resigned in

April, 2005, he had not passed the certification exam.

That same day, Mr. Dunn counseled Mitchell to get sick leave approved in advance and

to "personally contact your supervisor or senior rater as soon as possible but not later than

the commencement of the daily tour of duty to request approval of sick leave."[20]

Mitchell went to work on February 3, 2005, to deliver a doctor's note that indicated that

he was unable to work between February 2, 2005 and February 5, 2005.[21]  Mitchell could have

called to say that he was medically excused from work.  Afterwards, he became ill and was

---

[15]  Exhibit F, Moore Declaration at ¶ 5.

[16]  Exhibit G, Mitchell Affidavit, April 9, 2006, p. 2, ¶ 5.

[17]  Id.

[18]  Exhibit F, Moore Declaration at  ¶ 7.

[19]  Exhibit D, Moore MFR; Exhibit F, Moore Declaration at ¶ 7.

[20]  Exhibit F at p. 3, ¶ 8; Exhibit D, Memorandum of Record, February 2, 2005, Dunn to Mitchell.  Mitchell has repeatedly claimed that this memorandum is an "illegal order" in that it required him to report to the command center in person to request sick leave.  In fact, the plain language of the order reveals that the intent was for Mitchell to personally request sick leave, not through some third party.  Id.

[21]  Exhibit H, Dr. Moss Medical Note, February 2, 2005.

temporarily hospitalized.  This was the last time to appeared at work.[22]

Mitchell sent an e-mail message to Moore on February 5, 2005 that his doctors had ordered him to stay out of work until they determined the cause of his health problem.[23]  Mitchell further indicated that he would not take any visits or telephone calls from the command, as the only people he was communicating with were his family, medical personnel and his legal advisor.  He wrote that he would contact Moore should his status change.[24]

Moore called Mitchell's home twice on February 9, 2005, leaving messages for Mitchell to call him back concerning his condition.[25]  Mitchell's only response was to send a copy of a doctor's note via e-mail that was difficult to read.  Moore responded that he could not read the doctor's note and asked Mitchell to call him at the Command Center to notify him of Mitchell's status.[26]

On February 10, 2005, seeking to clarify Mitchell's status, Moore e-mailed a letter regarding Mitchell's leave status and medical condition.[27]  Moore informed Mitchell of his current leave balance and addressed Mitchell's failure to follow proper leave request procedures. Moore told Mitchell that the medical documentation he submitted was insufficient and instructed

---

[22]  Amended Complaint at 5, ¶ 14.

[23]  Exhibit I, Email Mitchell to Moore, February 5, 2005.

[24]  Id.

[25]  Exhibit J, Notice of Proposed Removal, Exhibit D, Moore Declaration.

[26]  Id.

[27]  Exhibit K, February 10, 2005 Letter

him to contact his supervisory chain to update them on his medical condition.  To help Mitchell,

Moore outlined Mitchell's FMLA rights and even includes the required documentation that

Mitchell would need to provide to request FMLA leave.[28]  Moore followed up, mailing the  letter

by certified and regular mail on February 11, 2005.[29]  Mitchell never responded to the letter.

A Notice of Proposed Removal was prepared and sent to Mitchell on March 31, 2005.[30]

Mitchell's removal was proposed because of  his absence from work since February 3, 2005, and

his lack of communication or explanation regarding this absence and his medical status.[31]

Mitchell had failed to respond to email, telephonic, and certified mail requests for information on

his well-being and plans to return to work.  The proposed removal letter noted that Mitchell's

supervisors had sent him the proper forms and contact information to request Family and

Medical Leave Act leave since he had exhausted his regular and sick leave.

Mitchell voluntarily resigned on April 9, 2005, rather than return to work.[32]

### III.  ARGUMENT

**A.**     The Standard for a Motion to Dismiss.

Federal courts are courts of limited jurisdiction.  Kokkonen v. Guardian Life Ins. Co., 511

U.S. 375 (1994).   A court must dismiss an action whenever it appears that the court lacks proper

---

[28]  Id.

[29]  Exhibit J, Notice of Proposed Removal.

[30]  Amended Complaint at 4, ¶ 11.

[31]  Exhibit J, Notice of Proposed Removal

[32]   Amended Complaint, at 5, ¶ 15.

jurisdiction.  <u>Billingsley v. C.I.R.</u>, 868 F.2d 1081, 1085 (9th Cir. 1989).  Subject matter

jurisdiction is fundamental and cannot be waived.  The party seeking to invoke the jurisdiction of

the court has the burden of establishing that jurisdiction exists.  <u>Scott v. Breeland</u>, 792 F.2d 925,

927 (9th Cir. 1986).

  A court also may dismiss a complaint under Fed. R. Civ. P. 12(b)(6) where "it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."[33]  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957);  <u>Moore v. City of Costa

Mesa</u>, 886 F.2d 260, 262 (9th Cir. 1989), <u>cert</u>. <u>denied</u>, 496 U.S. 906 (1990).  In reviewing the

complaint, all factual allegations "are taken as true and construed in the light most favorable to

[p]laintiff."  <u>Epstein v. Washington Energy Co.</u>, 83 F.3d 1136, 1140 (9th Cir.1996).  Dismissal is

improper unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief."  <u>Gibson v. United States</u>, 781 F.2d 1334, 1337

(9th Cir.1986).  In the present case, this court has not acquired subject matter jurisdiction over

Mitchell's claims because he has not satisfied the statutory preconditions for bringing an action

under the ADEA in federal district court.

---

  [33]  Regarding a motion to dismiss, courts must "accept the plaintiffs' allegations as true
and construe them in the light most favorable to plaintiffs." <u>In re Daou Systems, Inc. Securities
Litigation</u>, 397 F.3d 704, 709-10 (9th Cir. 2005).   However, "[c]onclusory allegations of law and
unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."
<u>In re VeriFone Securities Litigation</u>, 11 F.3d 865, 868 (9th Cir. 1993) (citations omitted).  *See
also* <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.), <u>cert</u>. <u>denied</u>, 429 U.S. 1031
(1981) (court does not "necessarily assume the truth of legal conclusions merely because they are
cast in the form of factual allegations.").

**B.** **Mitchell's ADEA Claim Should be Dismissed for Failure to File an Administrative Claim**

Mitchell's ADEA claim should be dismissed because he did not file an administrative claim regarding the events described in his complaint.

As this court previously noted, government employees who feel they have been subjected to age discrimination by their agency have two choices.[34]  One option is to proceed to federal court after giving thirty days notice of intent to sue to the Equal Employment Opportunity Commission ("EEOC").[35]  Mitchell did not take this option.[36]  Therefore, in order to pursue a claim of discrimination under the ADEA, Mitchell would have to comply with the second option.

The second option is to file a complaint with the agency.[37]  The procedures for federal employees to bring discrimination complaints under the ADEA are set forth in 29 C.F.R. Part 1614.  An employee must first consult an EEO counselor and work toward informal resolution of the matter.[38]  The counselor must be contacted no later than "45 days from the alleged discriminatory act or, in the case of a personnel action, within 45 days of its effective date."[39]  If the matter is not resolved informally, the counselor shall inform the employee in writing of the right to sue, and the employee must, within 15 days, file a formal complaint of age discrimination

---

[34]  Docket 20 at 3.

[35]  29 U.S.C. § 633a(d).

[36]  Docket 20 at 3.

[37]  Id.; 29 C.F.R. § 1614.106(a).

[38]  *See* 29 C.F.R. § 1614.105(a).

[39]  29 C.F.R. §1614.105(a)(1).

against the agency.[40]  The agency is then obligated to investigate the matter within 180 days.[41]

After the agency concludes its investigation, the employee may either request a hearing and

decision from an EEOC administrative judge, or seek to obtain an immediate final decision from

the agency.[42]  Any decision on the matter may be appealed to the EEOC, or challenged through

the filing of a civil action in federal district court within 90 days.[43]  An employee also may file a

civil action at any time after a complaint has been pending before the agency or the EEOC for at

least 180 days.[44]

The Court has previously found that Mitchell electronically sent a letter to EEO Manager

Sandra Martinez on January 17, 2005.[45]  In that letter, Mitchell states his "... belief that Mr. Dunn

is guilty of discrimination based upon my age and disability."[46]  The only mention of age in the

letter is Dunn's alleged statement to Mitchell: "That it is pretty humiliating that at my age and

with my education that I would be [sic] accept a GS-5 job."[47]

-------------------

[40]  29 C.F.R. §§ 1614.105(d), 1614.106(a)-(c).

[41]  29 C.F.R. §§ 1614.105(d), (e)(2).

[42]  29 C.F.R. § 1614.108(f).

[43]  29 C.F.R. § 1614.407.

[44]  29 C.F.R. § 1614.407(b).

[45]  Docket 20 at 4.  Defendant had previously argued that it had no record of receiving such email, but the Court ruled otherwise.  Based on the evidence presented, Defendant still contends that the email was not received and preserves the factual issue should the case proceed to trial.

[46]  Exhibit A, Letter Mitchell to Martinez, January 14, 2005.

[47]  Id.  The letter mostly discusses disability discrimination.

The allegations of age discrimination in Mitchell's complaint do not deal with Mr. Dunn's alleged humiliating comment,  Mitchell's complaint is about being absent without leave on January 29 and again from March 3 through March 31, 2005, the March 31st Notice of Proposed Removal, and his resignation on April 9, 2005.[48]  These events all occurred after he emailed the January 14 letter to the EEO counselor.

Although Mitchell did take the very first step of contacting an EEO counselor about the humiliating comment, he never raised the issues at bar in the EEO administrative process. Mitchell was issued the Notice of Proposed Removal on March 31, 2005 and he resigned on April 9, 2005.  He did not amend his earlier submission or file another administrative complaint. It is impossible for Mitchell's purported EEO complaint letter of January 14, 2005, to include these events; they had not occurred.  Mitchell has not exhausted his administrative remedies for those claims raised in his complaint.  Therefore, they should be dismissed.[49]

This Court earlier noted that there is question "whether administrative exhaustion or cooperation is even required in the context of an ADEA claim."[50]  The Ninth Circuit has held that exhaustion is not required under the ADEA when there is no simultaneous administrative and judicial proceedings.  Bankston v. White, 345 F.3d 768. 776 (9th Cir. 2003).  However, Bankston did not hold that a claimant does not have to do anything before filing a complaint in district

---

[48]  Amended Complaint at ¶¶ 11-15, 19.

[49]  Notice to the agency does not satisfy the requirement of 29 U.S.C. § 633a(d) that intent to sue be transmitted tot he EEOC.  More v. Snow, 480 F.Supp.2d 257, 269 (D.D.C. 2007)(citing Rann v Chao, 346 F.3d 192 (D.C. Cir. 2003)).

[50]  Docket 20 at 4-5.

court.  Bankston filed an appeal with the Merit Systems Protection Board, but then withdrew the

appeal.[51]  Then he gave the EEOC the required notice of his intent to file suit in federal court, and

after the required time period, he filed suit.  The Ninth Circuit held that the withdrawal of the age

discrimination claim did not bar a later civil action, because the plaintiff followed the proper

notice requirements before filing suit.  In reaching its decision, the <u>Bankston</u> court distinguished

the case from <u>Castro v. United States</u>, 775 F.2d 399, 404 (1st Cir.1985), where the First Circuit

barred jurisdiction over an ADEA lawsuit when the plaintiff had dismissed an administrative

proceeding before filing suit and had also failed to notify the EEOC of intent to sue.  Similar to

the plaintiff in <u>Castro</u>, here Mitchell did not notify the EEOC of his intent to sue.  Even if he had

pled the events described in his complaint of age discrimination and later abandoned or withdrew

the claim, this action would still be barred.

**C.    The United States[52] Has Not Waived Sovereign Immunity for Retaliation Claims Based upon the ADEA**.

Mitchell's complaint might be construed to include a claim of retaliation.  If the Court

were to so construe, then such a claim of retaliation must be dismissed because the United States

has not waived sovereign immunity for a claim of retaliation premised on the ADEA.  Congress

did not intend for 29 U.S.C. § 633a to include a cause of action for retaliation as the result of

having filed an age discrimination related complaint.  <u>Gomez-Perez v Potter</u>, 476 F.3d 54, 60

(1st Cir. 2007); <u>Cyr v. Perry</u>, 301 F. Supp 2d 527, 535 (E. D. Va 2004); <u>Yap v. Slater</u>, 165 F.

---

[51]  <u>Id.</u> at 769.

[52]  The United States' sovereign immunity extends to executive agencies to include the military departments.  *See* <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (claims against a federal agency is effectively a claim against the United States).

Supp. 2d 1118, 1126-27 (D. Hawaii 2001); *see also* <u>Whitman v. Mineta</u>, Case No. A04-0018 CV (JKS)(D. Alaska, December 7, 2005)[53]; but *see* <u>Forman v. Small</u>, 271 F.3d 285 (D. C. Cir. 2001)

A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980); *see* <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 95 (1990). It must be contained in statutory language that is "specific and express." <u>United States v. King</u>, 395 U.S. 1, 4 (1969). For this reason, the waiver cannot be enlarged beyond the boundaries that the statutory language plainly requires. <u>United States v. Nordic Village, Inc.</u>, 503 U.S. 30, 34 (1992); *see* <u>Lane v. Pena</u>, 518 U.S. 187, 191-92 (1996). Waivers of the Government's sovereign immunity, "are not generally to be 'liberally construed.'" <u>Nordic Village</u>, 503 U.S. at 34. Instead, "the Government's consent to be sued 'must be construed strictly in favor of the sovereign.'" <u>Id</u>. (quoting <u>Ruckelshaus v. Sierra Club</u>, 463 U.S. 680, 685 (1983)); *see* <u>Ardestani v. INS</u>, 502 U.S. 129, 137 (1991) ("[a]ny such waiver must be strictly construed in favor of the United States").

When Congress expanded the ADEA to cover federal employees in 1974, federal employees were already protected by civil service regulations barring retaliation. Executive Order 10,987 (issued in 1962) and regulations promulgated thereunder created procedures to administratively appeal adverse employment actions and required that "the employee, in presenting his appeal, shall . . . [b]e assured freedom from restraint, interference, coercion, discrimination, or reprisal." 5 C.F.R. § 771.211(a) (1965). A separate set of regulations barred

---

[53] Exhibit L. This case is currently on appeal to the Court of Appeals for the Ninth Circuit. Case No. 05-36231.

retaliation in discrimination cases (although at the time, age discrimination was not a form of

discrimination barred by Executive Order). *See* 5 C.F.R. § 713.213(b) (1966);

5 C.F.R. § 713.261-713.262 (1973).

These remedies within the civil service system – including the remedy for retaliation –

were eventually consolidated, expanded, and codified in the Civil Service Reform Act of 1978.

The currently operative provision, 5 U.S.C. § 2302(b), makes it a prohibited personnel practice to

"take or fail to take, or threaten to take or fail to take, any personnel action" because an employee

has "exercise[d] . . . any appeal, complaint or grievance right granted by any law, rule, or

regulation" or "testif[ied] for or otherwise lawfully assist[ed] any individual in the exercise of

any [such] right."  5 U.S.C. § 2302(b)(9).

Congress enacted the federal sector ADEA provision in 1974 against this background of

established and effective remedies for retaliation in the federal sector.  Given this setting,

Congress drafted the text of the federal sector ADEA so as not to create an additional and largely

unnecessary special remedy for retaliation in age discrimination cases. The federal government

ADEA provision expressly speaks only to preventing "discrimination based on age": "[a]ll

personnel actions affecting employees or applicants for employment who are at least 40 years of

age . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a)

(emphasis added).  That language is not sufficient to waive sovereign immunity for a retaliation

claim against the federal government, which is nowhere mentioned in the provision.  The

language does not "unequivocally" encompass retaliation (Mitchell, 445 U.S. at 538), much less

"specific[ally] and express[ly]" state that the United States is liable under that statute for

Mitchell v. Geren
Case No. 3:05-cv-00264-JWS                    14

retaliation (King, 395 U.S. at 4).  Indeed, the only way to encompass retaliation within this particular remedy is to "enlarge [the scope of the statute] . . . beyond what the language [barring discrimination] requires" (Nordic Village, 503 U.S. at 34) – by enlarging the common sense meaning of discrimination to incorporate retaliation as a prophylactic measure to protect individuals who file age claims.  But as we have explained, there was no reason for Congress to enact special reprisal protections for age claimants because federal regulations, and soon thereafter federal statute, already barred all reprisals for challenging adverse employment decisions.

The statutory language barring "discrimination based on age," when "strictly construed" (Ardestani, 502 U.S. at 137), simply cannot be read to cover retaliation.  Rather, retaliation is discrimination with a basis distinct from age – it is discrimination because the individual has participated in a civil rights proceeding.  See § 623(d) (private sector retaliation provision bars "discriminat[ion] . . . because [an] individual . . . has made a charge . . . under [the ADEA]) (emphasis added); 5 U.S.C § 2302 (barring adverse personnel actions "because of the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation") (emphasis added); Malhotra v. Cotter & Co., 885 F.2d 1305, 1312-13 (7th Cir. 1989) (Posner, J., concurring).  Judge Posner explained that:

> [R]etaliation and discrimination are separate wrongs.  A white person who opposes discrimination against blacks and is fired in retaliation for doing so is not being discriminated against because of his race, just as a railroad worker who is fired for filing a complaint under the Federal Employee Liability Act cannot claim that the retaliation is itself a violation of that Act.  Title VII does not treat retaliation as a form of discrimination; it contains a separate provision forbidding retaliation.

Id. A strict reading of the phrase "discrimination based on age" does not encompass retaliation.

Based upon the legislative history and background, coupled with the plain language of the ADEA, Mitchell cannot bring an ADEA retaliation claim against the Defendant because he cannot establish a waiver of sovereign immunity.

**D**.    **ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

Alternatively, should the court not dismiss Mitchell's ADEA claim, summary judgment should be entered against Mr. Mitchell, as explained below.

1.    Standard of Proof for ADEA Claims

The burden of proof for Plaintiff's ADEA claim is exactly the same as the burdens of proof and persuasion for Title VII. Ritter v. Huges Aircraft Co., 58 F.3d 454, 456 (9th Cir. 1995) (*quoting* Wallis v. J.R. Simplot Co., 26 F.3d 885, 888 (9th Cir. 1994). Mitchell bears the initial burden of establishing a *prima facie* case. If Mitchell can establish a *prima facie* disparate treatment claim based upon age, "then the traditional burden-shifting framework of McDonnell Douglas will apply." Fenney v. Dakota, Minnesota & Eastern R. Co., 327 F.3d 707, 711-712 (8th Cir. 2003). Under this framework, the burden of persuasion remains at all times with the plaintiff, while the defendant bears only a burden of production - not proof or persuasion - to articulate a legitimate nondiscriminatory reason for the employment decision. *See* St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993). Once the *prima facie* elements have been met, the employer must come forward with evidence of a legitimate, nondiscriminatory reason for the adverse action.[54]

---

[54]   If this burden of production is met, then the burden shifts back to the plaintiff to show the articulated reason is pretext and that discriminatory animus was the true motivation for the

2.      Plaintiff's Age Discrimination Claims Warrant Summary Judgment Because He Cannot Establish a *Prima Facie* Case.

Mitchell claims that he was discriminated against him because of his age when he was: "harassed and retaliated against by supervisors", issued a "Notice of Proposed Removal", and forced to resign due to the wrongful actions of the Defendant.[55]  To assert claims of age discrimination under the ADEA, Mitchell must establish a *prima facie* case of discrimination by showing: (1) he belongs to a protected class; (2) he was performing according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with qualifications similar to his own were treated more favorably.  *See* Wallis v. J.R. Simplot Co., 26 F.3d at 885; Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1220 (9th Cir. 1998) (*citing* McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  Plaintiff cannot establish a *prima facie* case for age discrimination because he cannot show that (1) he was subjected to an adverse employment action; or (2) he was performing to his employer's legitimate expectations.

a..  Mitchell's Proposed Removal Claim Is Not Adverse Employment Action

A Notice of Proposed Removal is an action that, as a matter of law, does not rise to the level of an adverse employment action.  Brooks v. City of San Mateo, 229 F.3d 917, 929-30 (9th Cir. 2000) (stating that in order to show adverse personnel action, an employee must show a final or lasting action).  A Notice of Proposed Removal is by its very nature only the initial step to a possible, eventual removal. *See* Niimi-Montalbo v. White, 243 F.Supp. 2d 1109, 1128 (D.

---

action. St. Mary's Honor Ctr., 509 U.S. at 511.  Plaintiff's burden to show pretext merges with the plaintiff's ultimate burden of persuasion to show intentional discrimination.  *See* Fenney, 327 F.3d at 711-712.

[55]Amended Complaint at p. 4-5, ¶¶ 10-13 & 15.

Hawaii 2003) (applying <u>Brooks</u> to find that a Notice of Proposed Removal does not have

sufficient finality to constitute an adverse employment action).  An employee who receives a

Notice of Proposed Removal is afforded the opportunity to respond and may convince the

employer not to carry through with the proposed action.  The Notice of Proposed Removal in this

case states, "Full and impartial consideration will be given to any reply you make.  You will

receive a written notice of decision from Mr. Pressley who has authority to effect a final decision

in this formal disciplinary action, whether you reply or not."[56]  Mitchell never received a Notice

of Removal.  As it stands, Plaintiff is complaining of an event that never came to fruition.

<u>Keyser v. Sacramento City Unified School Dist</u>., 265 F.3d 741, 752, n.4 (9th Cir. 2000) (stating

that action that never came to fruition is not even a potentially viable adverse action).

>    b.    <u>Plaintiff's General Allegation of Harassment is Not an Adverse
>          Employment Action</u>.

Mitchell alleges that his supervisors harassed and retaliated against him.  However, that is

not sufficient to be an adverse employment action.  His allegation that his employer would "start

documenting" him is not an adverse employment action.  <i>Cf.</i> <u>Nidds v. Schindler Elevator Corp</u>.,

113 F.3d 912, 919 (9th Cir. 1997)(holding that transfer with no reduction in compensation is not

an adverse employment action); <u>Hollins v. Atlantic Co., Inc.</u>, 188 F.3d 652, 662 (6th Cir. 1999)

(holding that mere threat to terminate was not an adverse employment action under ADEA

because it merely stated the possibility of transfer or discharge); <u>Helgeson v. American Int'l

Group, Inc.</u>, 44 F.Supp. 2d 1091, 1099 (S.D. Ca. 1999) (holding that two oral reprimands are not

adverse employment actions.).  Furthermore, Mitchell states that the comments regarding

---

[56] Exhibit J, Notice of Proposed Removal.

documentation relate to his alleged disability, not his age: "[Mr. Dunn] asked my coworker to start documenting how mediation was affecting me shortly after returning to work after major surgery."[57]  Even if one were to assume this allegation was true, it provides no probative evidence to support a claim of age bias because the statement on its fact relates to alleged disability discrimination.

Second, Mitchell <u>does not</u> allege that his supervisors documented his work performance, just that his supervisor stated he was going to start documenting his performance.[58]  A verbal threat to "start documenting" an employee is even less threatening and has less impact on an employee's employment than a threat to terminate the employee, which is not an adverse action. *See* <u>Hollins</u>, 188 F.3d at 662.  Mitchell does not allege that his performance was in fact "documented" and he fails to show how the purported "documenting" affected his employment in any way.

The remaining alleged harassing comments raised in Mitchell's affidavits also do not show an alteration to the terms, conditions, or nature of Mitchell's employment.  *See* <u>Vasquez v. County of Los Angeles</u>, 307 F.3d 884, 891 (9thCir. 2002)(finding that an adverse employment action must be reviewed under an objective standard to prevent "every minor employment action that an employee did not like [from being] the basis of a discrimination suit.")  At best, the comments, if they occurred, are insensitive statements or criticism.  *See* <u>Kortan v. California Youth Auth.</u>, 217 F.3d 1104, 113 (9th Cir. 2000)(criticism without more does not constitute an

---

[57] Exhibit A, Mitchell Letter; Exhibit B, Mitchell Affidavit, December 19, 2006, p. 3, ¶ 7a.

[58] <u>Id.</u>

adverse employment action).  Badmouthing an employee, as long as it is outside the job reference

context, is not an adverse employment action.  *Cf.* Nunez v. City of Los Angeles, 147 F.3d 867,

875 (9th Cir. 1998)(bad mouthing and harsh words insufficient to be an adverse employment

action in a First Amendment retaliation case).  Mitchell cannot establish a *prima facie* case of age

discrimination because of any alleged statements by his supervisors and co-workers.

         c.     Mitchell Failed to Show that He Performed to the Legitimate Expectations
               of his Employer.

Mitchell did not return to work after February 3, 2005.  He also did not contact his

supervisors, even after he was instructed to do so.  This is a failure to meet the most basic

employment requirement of his job - attendance. *See* Humphrey v. Memorial Hosps. Ass'n,

239 F.3d 1128, 1135 n.11 (9th Cir. 2001) (noting that in the context of an ADA claim, regular and

predicable attendance is an essential function of the position); Aramburu v. Boeing Co.,

112 F.3d 1398, 1403 (10th Cir. 1997) (failure to maintain a satisfactory attendance record is a

legitimate nondiscriminatory reason for terminating an employee).  By failing to maintain contact

with his supervisors,  Mitchell prevented his supervisors from knowing when, or even if, he

would return to his duty position.  Mitchell had no contact with his immediate supervisor after he

sent an e-mail on February 5, 2005 and provided an illegible doctor's note on February 9, 2005,

notwithstanding Mr. Moore's repeated requests to contact him.  Even if one were to credit

Mitchell's claim that his absence after February 9, 2005, was covered by the Family and Medical

Leave Act[59], there is no excuse for his refusal to respond to his supervisors' requests to contact

them.

---

     [59] Exhibit B, Mitchell Affidavit, dated December 19, 2005, p. 7, ¶ 20.

Mitchell also failed to perform up to the legitimate expectations of his employer by not successfully maintaining his monthly certification. Mitchell did not pass his certification test on February 2, 2005. The Emergency Action Certification was a mandatory condition of Mitchell's employment.[60] Mitchell never passed the Emergency Action Examination between the time he failed the examination on February 2, 2005 and his resignation in April of 2005. By failing to maintain his Emergency Action certification, a necessary requirement of his position, Plaintiff was not and could not perform to the legitimate expectations of his employer.

3.    Plaintiff Cannot Rebut Defendants' Legitimate, Nondiscriminatory Reasons for the Proposed Notice of Removal.

Defendant proposed Mitchell's removal from his job because he had been AWOL for almost a month, beginning on March 3, 2005, and he had failed to contact his chain of command to update them on his absence or to follow proper leave procedures.[61] After he was released from the hospital, Mitchell presented conflicting doctor's notes via e-mail: one indicating that Mr. Mitchell could not return to work until after February 9, 2005 and the other indicating an indefinite absence.[62] He did not return to work on February 10, 2005. His supervisors made repeated attempts to contact him, but the only response was from Mitchell's girlfriend, Robin, who left a phone message that "he would be the first to know" if Mr. Mitchell's health status changed and "ordering all Army personnel to leave John alone to recover in peace." Id.

There is no disputed that Mitchell did not return to work after February 3, 2005. He told

---

[60] Exhibit M, Position Description, Emergency Action Assistant, p. 3.

[61] Exhibit J, Notice of Proposed Removal

[62] Exhibit N, Mitchell's Letter and Notes.

Mr. Moore on February 5, 2005, that he would not take telephone calls or visits from anyone other than family, medical personnel, and his legal advisor.[63]  He said that he would inform  Moore once his condition changed, but he never made any further contact after February 9, 2005, when he provided an electronic copy of an illegible doctor's note.  Mitchell's refusal to speak or communicate with his supervisors, despite legitimate requests for him to contact them, was unacceptable .

Since Defendant had legitimate, nondiscriminatory reasons for taking the actions of which Mitchell complains, he must come forward with evidence that demonstrates that the Defendant's reasons are a mere pretext to hide age discrimination.  This he cannot do.  To add to Mitchell's burden to demonstrate pretext, Defendant is entitled to a strong inference that there was no discrimination involved based upon the "same-actor inference."   The "same-actor inference" arises when the same actor was responsible for both the hiring and the firing of a discrimination plaintiff and both actions occur within a short period of time.  This raises a strong inference that there was no discrimination.  Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270-71 (1996) (9th Circuit).   The Ninth Circuit has expanded the "same-actor inference" beyond the circumstances of hiring and firing to encompass other cases with a favorable action followed by an unfavorable action.  Coghlan v. American Seafoods Co., 413 F.3d 1090, 1097 (9th Cir. 2005).  Mitchell claims that Mr. Dunn, who hired him in January 2004 when Mitchell was 48, was guilty of age discrimination as year later.  In Coghlan, the Ninth Circuit held that favorable employment action taken by the same actor who approximately one year later took an alleged adverse employment

---

[63]  Exhibit A, Mitchell Letter.

action, warranted the "same-actor inference."  413 F.3d at 1097.  Such inference is warranted in the present case.

> 4.     Mitchell Failed to Establish  a Constructive Discharge

Finally, Mitchell claims that he did not quit, but that he was constructively discharged.  To establish a constructive discharge claim, he must show "conditions of employment so intolerable or discriminatory so as to effectively force the employee to resign."  Sanchez v. City of Santa Ana, 915 F.2d 424, 431 (9th Cir. 1990).  In order to make this "intolerable" showing, the predicate facts are reviewed objectively -whether a reasonable person in plaintiff's position would have felt forced to resign.  Id.  The harassment must *be intolerable at the time of the employee's resignation.*  Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994)(emphasis in original).  Yet, Mitchell had not been at work for over two months when he submitted his resignation on April 9, 2005.  He claims that he was unaware of the Notice of Proposed Removal when he submitted his letter of resignation[64] or that he was being carried as AWOL since early March.[65]   The only claim that could support Mitchell's constructive discharge claim is the alleged harassment by his supervisors that he had not seen or spoken to for two months.  His claim of constructive discharge is simply not plausible on its face.

## IV.  CONCLUSION

For the foregoing reasons, Defendant urges the Court to dismiss the Complaint and/or to enter summary judgment in favor of Defendant on all claims asserted by Plaintiff.

---

[64]  Exhibit B, Mitchell Affidavit, December 19, 2006, p. 9 ¶ 29.

[65]  Id. at p. 8, ¶ 25.

Respectfully requested this 27th day of August, 2007, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/Richard L. Pomeroy
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-2344
E-mail: richard.pomeroy@usdoj.gov
Alaska Bar No.8906031

**CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2007,
a copy of the foregoing
DEFENDANT'S MOTION TO DISMISS, OR
IN THE ALTERNATIVE MOTION FOR
 SUMMARY JUDGMENT was served
electronically on Joe P. Josephson, Esq.

s/ Richard L. Pomeroy