

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TERRY L. WHITMAN,<br><br>              Plaintiff,<br><br>vs.<br><br>THE HON. NORMAN Y. MINETA,<br>SECRETARY, UNITED STATES<br>DEPARTMENT OF<br>TRANSPORTATION,<br><br>              Defendant. | Case No. A04-0018 CV (JKS)<br><br><u>O R D E R</u> |

    Before the Court are two motions. First, Defendant moves to dismiss Plaintiff's retaliation claims, demand for jury trial, and demand for compensatory damages. Docket Nos. 10 (Mot.); 11 (Opp'n); 12 (Reply). Second, Defendant moves for partial summary judgment. Docket Nos. 17 (Mot.); 18 (Opp'n); 21 (Reply); 22 (Supplemental Reply).

### FACTUAL AND PROCEDURAL BACKGROUND

    Terry L. Whitman, proceeding pro se, alleges age discrimination and retaliation by the United States Department of Transportation, Federal Aviation Administration ("FAA"), Anchorage Air Route Traffic Control Center ("ARTCC"), in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. *See* Docket Nos. 1; 11. Whitman alleges that on May 7, 1999, he was informed via email by Stephen Creamer, Air Traffic Manager for ARTCC, that a student intern, Stanley Ferguson, was to be permanently assigned to ARTCC as a Traffic Management Analyst. Whitman argues:

> This status conversion for Mr. Ferguson from non-tenured, part-time, temporary employee to permanent employee was effected during a hiring freeze into a newly-created position. This



>hire without competition deprived [Whitman] of an opportunity for advancement to a position for which [Whitman] had qualifications after serving fourteen years in the FAA as a Flight Data specialist.

Docket No. 1 at 2. After learning of Ferguson's assignment, Whitman contacted his supervisors and the FAA Alaska Region Civil Rights Office. *Id*. at 2–3. Thereafter he requested a hearing before an Equal Employment Opportunity Commission ("EEOC") Administrative Law Judge ("ALJ"). *Id*. at 3.

After the FAA had completed the investigation, but before the hearing occurred, Whitman began experiencing situations at work that he characterizes as retaliatory in nature. *Id*. When his discrimination claim came before the ALJ, Whitman moved to add nine additional claims involving retaliation and discrimination, and the motion was granted. *See* Docket No. 10, Ex. A. The additional nine claims are that the Department of Transportation, FAA violated the ADEA by: (1) retaliating against Whitman because of his age discrimination complaint by refusing to provide him with information about temporary duty assignments ("details") with Airway Facilities; (2) retaliating against him by denying his request for a detail on the grounds that he had not followed the correct unwritten procedure and that staffing did not permit his release for detail; (3) retaliating against him by informing him that a previously approved 180-day detail for him would be limited to 120 days; (4) retaliating and discriminating against him by denying him the opportunity to be permanently hired by Airway Facilities by approving a work detail request for another employee; (5) retaliating against him by improperly disqualifying him from consideration for a Computer Specialist position; (6) retaliating against him by denying him an opportunity for a second Airway Facilities detail by misdirecting his inquiries or denying the existence of the work detail during the relevant time period; (7) retaliating against him by intimidating him in response to his discrimination allegations and requested relief in the form of an alternative work detail; (8) retaliating against him by giving him an Annual Performance Rating that was lower than the previous year despite justification for a higher score than the previous year; and (9) retaliating against him by denying his request for a detail to receive training on the ARTCC Local Area Network on the grounds that the detail was not available even though such a detail had previously been approved for two other employees. Docket No. 10, Ex. A at 2–3. After conducting a hearing on the matter, the ALJ denied the age discrimination and retaliation claims. *See*

ORDER

Docket No. 1 at 10. Whitman appealed the decision to the Office of Federal Operations ("OFO"), which denied his appeal. *Id.* Whitman moved for reconsideration by the OFO, and the motion was denied. *Id.* at 10–11. Subsequently, Whitman filed the present action. The Court has jurisdiction under 28 U.S.C. § 1331.

## DISCUSSION

Defendant moves for dismissal of Whitman's retaliation claims on the ground that the ADEA does not waive sovereign immunity for retaliation claims. Docket No. 10. Defendant also seeks to strike Whitman's request for a jury trial and compensatory damages, as neither is permitted under the ADEA. *Id.* Defendant further moves for summary judgment that Whitman was not discriminated against on the basis of age when Ferguson, the student intern, was converted to a permanent position. Docket No. 17. The Court will address the motions in that order.

**I. Motion to Dismiss Claims**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for "lack of jurisdiction over the subject matter." *See* Fed. R. Civ. P. 12(b)(1). When considering a Rule 12(b)(1) motion, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction." *See McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction. *See Sopcak v. N. Mountain Helicopter Serv.*, 52 F.3d 817, 818 (9th Cir. 1995). A reviewing court must presume a lack of jurisdiction until the plaintiff establishes otherwise. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994). A complaint will be dismissed for lack of subject matter jurisdiction if (1) the case does not "arise under" any federal law or the United States Constitution, (2) there is no case or controversy within the meaning of that constitutional term, or (3) the cause is not one described by any jurisdictional statute. *See Baker v. Carr*, 369 U.S. 186, 198 (1962).

Defendant moves for the dismissal of Whitman's retaliation claims primarily on the ground that the ADEA does not waive sovereign immunity for retaliation following an age discrimination claim. Defendant alternatively argues that Whitman did not exhaust his administrative remedies for the

ORDER

retaliation claims. Docket Nos. 10; 15. Defendant also seeks to have Whitman's demands for a jury trial and for compensatory damages dismissed. *Id.*

It has long been settled that the United States is immune from suit unless it has "unequivocally expressed in a statutory text" a waiver of immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996). Waiver of sovereign immunity cannot be implied, nor divined from a statute's legislative history. *Id.* Where sovereign immunity is expressly waived, the "waiver will be strictly construed in terms of its scope, in favor of the sovereign." *Id.* The Supreme Court has indicated, however, that "statutory language, taken together with statutory purposes, history," and the absence of a compelling reason to the contrary may "produce evidence of a waiver" of sovereign immunity. *West v. Gibson*, 527 U.S. 212, 222 (1999) (noting that the Compensatory Damages Amendment to Title VII "waives sovereign immunity in respect to an award of compensatory damages" and determining that the EEOC has authority to administer the waived damages remedy).

**A. Retaliation Claims**

29 U.S.C. § 633a(a) protects persons employed by the Federal Government "who are at least 40 years of age . . . from any discrimination based on age." In general this provision mirrors the ADEA provision applicable to the private sector. *See* 29 U.S.C. § 623. The private sector provision, however, expressly prohibits retaliation and § 633a does not. *See* 29 U.S.C. § 623(d). Case law from around the country conflicts about whether the lack of an express prohibition of retaliation in the ADEA provision applicable to Federal Government employees means that the government has not waived sovereign immunity for retaliation claims. *Compare Forman v. Small*, 271 F.3d 285, 298–99 (D.C. Cir. 2001) ("we hold that § 633a waives sovereign immunity as to claims of retaliation,") *and Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989) ("it may be inferred that the breadth of the language of § 633a, requiring that federal government employment decisions affecting covered personnel be 'free from any discrimination based on age' . . . is sufficiently broad to prohibit age-related retaliation,") *with Cyr v. Perry*, 301 F. Supp.2d 527, 535 (E.D. Va. 2004) ("because § 633a of the ADEA contains no express and unequivocal language that waives sovereign immunity with respect to retaliation claims, plaintiff's claims for retaliation under the ADEA are barred by sovereign immunity and must be dismissed,") *and Yap v. Slater*, 165 F. Supp. 2d. 1118, 1126–27 (D. Hawai'i 2001) (noting without deciding that the

ORDER

lack of express waiver "strongly suggests that Congress declined to waive sovereign immunity with respect to retaliation claims").

In determining that the government has waived sovereign immunity for retaliation claims, the D.C. Circuit Court reasoned in *Forman* that the plain language of § 633a constitutes a waiver because "a work place cannot be free from any age discrimination if an employer can take an adverse employment action against its employees because the employee has brought an age discrimination claim against the employer." 271 F.3d at 298; *see also Bornholdt*, 869 F.2d at 62 (noting that "it may be inferred that the breadth of the language of § 633a . . . is sufficiently broad to prohibit age-related retaliation").[1] In other words, the breadth of § 633a shows that Congress intended waiver for retaliation claims. The D.C. Circuit Court's legal analysis of the issue is extensive. Further, the analysis outlines the compelling policy reasons for protecting federal government employees from retaliation just as private sector employees are protected. Nonetheless, it seems inescapable that the D.C. Circuit Court found an implied waiver, as the language of § 633a clearly does not contain an express waiver. *See Cyr*, 301 F. Supp.2d at 533–34.

Even looking beyond the absence of express waiver for "evidence" of waiver in the "language, purpose[], and history" of the ADEA, no waiver is to be found. *West*, 527 U.S. at 217. In *West* the Court examined the subsection of Title VII that provides the EEOC with authority to enforce federal government employment antidiscrimination standards. *Id.* at 215 (citing 42 U.S.C. § 2000e-16(b)). Turning to a subsequent amendment permitting the recovery of compensatory damages under certain circumstances, the Court determined that the government has waived sovereign immunity with respect to recovery of compensatory damages and that Congress authorized the EEOC to award such damages.

---

[1] Among other cases, *Bornholdt* cites *White v. General Services Administration*, 652 F.2d 913, 917 (9th Cir. 1981), to support this proposition by analogy. In *White* the Ninth Circuit determined that a similar provision in Title VII requiring that government employment decisions be "free from any discrimination" was broad enough to authorize an action for retaliation. *Id.* However, *White* is distinguishable because there the Ninth Circuit looked to the prohibition of retaliation applicable to private employers. Unlike § 633a, the Title VII provision applicable to the Federal Government does not include an exclusivity provision. *See* 42 U.S.C. § 2000e-16(d). The Ninth Circuit therefore extrapolated from the private sector provision to find the retaliation prohibition applicable to the government provision of Title VII.

ORDER

*Id.* at 217 ("The language, purposes, and history of the 1972 Title VII extension and the 1991 CDA convince us that Congress has authorized the EEOC to award compensatory damages in Federal Government employment discrimination cases.").

Whether the language, purpose, and history of §633a indicate a waiver of sovereign immunity for retaliation claims is a close question. Looking first to the language of the provision, § 633a seeks to make federal employees "free from any discrimination based on age." 29 U.S.C. § 633a(a). The *Forman* court concluded that this language is sufficiently broad to encompass retaliation claims. 271 F.3d at 298. However, because a claim of retaliation is separate and apart from an age discrimination claim, the breadth of § 633a does not necessarily indicate an intent to encompass retaliation. *See Cyr*, 301 F. Supp. 2d at 534 (citing *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) (noting in the context of a racial discrimination suit, "[r]etaliation and discrimination are separate wrongs. A white person who opposes discrimination against blacks and is fired in retaliation for doing so is not being discriminated against because of his race . . .")). Furthermore, the language of § 633a specifically states that "[a]ny personnel action of any department, agency, or other entity referred to in subsection (a) of this section shall not be subject to, or affected by, any provision of this chapter, other than the provisions of Section 631(b) of this title [setting the minimum age requirement at forty years]." 29 U.S.C. § 633a(f). This exclusivity provision makes the absence of any reference to retaliation more conspicuous, given the express prohibition of retaliation in the private sector provisions. *See* 29 U.S.C. § 623 ("It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section . . . .").

The second and third sources of potential evidence of waiver identified by the Supreme Court in *West* are the "purposes" and "history" of the relevant act. 527 U.S. at 217. The "purpose [of the ADEA] is threefold: to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; and to help employers and workers find ways of meeting problems arising from the impact of age on employment." S. Rep. No. 95-493, at 505 (1977). None of the stated reasons indicates intent to include protection from reprisal in the ADEA. Furthermore, the history of § 633a does not provide persuasive evidence of waiver of sovereign

ORDER

immunity for retaliation claims. The ADEA provision applicable to the private sector that prohibits retaliation, was enacted several years before § 633a. The potential for retaliation stemming from instituting an ADEA action was on Congress's radar screen. Had Congress intended to waive sovereign immunity for retaliation claims, it could easily have included a provision identical to the provision applicable to the private sector.

The strongest argument in favor of finding a waiver of sovereign immunity for retaliation claims is that it seems incongruous that Congress would not have intended such protections for federal employees. However, in the absence of an express waiver, and without strong evidence in the "language, purposes, and history" of waiver the Court will decline to entertain Whitman's retaliation claims. Accordingly, those claims will be dismissed.

### B. Jury Trial Demand

In his complaint Whitman requests that his case be heard by a jury. Docket No. 1. However, like waiver of sovereign immunity, the government must unequivocally express consent to trial by jury. *See Lehman v. Nakshian*, 453 U.S. 156, 160 (1981). "Congress did not intend to confer a right to trial by jury on ADEA plaintiffs proceeding against the Federal Government." *Id*. at 165. Defendant's motion to strike Whitman's demand for jury trial should therefore be granted.

### C. Compensatory Damages

Whitman seeks $300,000 in compensatory damages "for nonpecuniary losses given that [he] has been subjected to a strategy of constant retaliation intended to deter Plaintiff and others from engaging in a protected activity." Docket No. 1 at 17–18. While Whitman may be entitled to back pay due to his age discrimination claims, his retaliation claims are not cognizable and therefore not compensable.

### II. Motion for Summary Judgment

Defendant moves for partial summary judgment on Whitman's age discrimination claim. Specifically, Defendant seeks summary judgment regarding the promotion of Ferguson, the participant in the student intern program, to a full-time salaried position, which Defendant argues was in full accord with FAA policy and for which Whitman was not eligible. Docket Nos. 17 (Mot.); 18 (Opp'n); 21 (Reply); 22 (Supplemental Reply).

ORDER

The standards for summary judgment are well settled. Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P. 56(b) (providing the same standard for parties defending a claim). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will construe all evidence and draw all evidentiary inferences in favor of the nonmoving party. 10A Charles Alan Wright et al., Federal Practice & Procedure § 2727, at 459 & n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247–48. The nonmoving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

The criteria applied to Title VII claims also apply to ADEA claims. *Palmer v. United States*, 794 F.2d 534, 537 (9th Cir. 1986). The United States Supreme Court outlined the standards applicable to Title VII claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under *McDonnell Douglas*, a plaintiff must first make a prima facie case of discrimination. *Id.* In the context of a motion for summary judgment, a prima facie case is established when the plaintiff produces "enough evidence to permit the trier of fact to infer the fact at issue." *Palmer*, 794 F.2d at 537 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 n.7 (1981). If the plaintiff successfully

makes a prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802. "If the employer carries this burden the plaintiff has the opportunity to prove by a preponderance of the evidence that the employer's stated reason for plaintiff's rejection was in fact a pretext for discrimination, and not the true reason for his discharge." *Palmer*, 794 F.2d at 537.

Under the *McDonnel Douglas* framework, a plaintiff alleging disparate treatment under the ADEA establishes a prima facie case by showing that: (1) he belongs to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or that the circumstances surrounding the adverse employment action give rise to an inference of discrimination. *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004). As an alternative to the *McDonnel Douglas* framework, a plaintiff may make a prima facie case by offering direct or circumstantial evidence of discriminatory intent. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).

Here, the parties do not dispute that Whitman, who was forty-five years old when Ferguson was converted in May, 1999, is a member of a protected class. *See* 29 U.S.C. § 633a(a). The parties vigorously dispute the remaining three components of a prima facie case: whether Whitman was qualified for the conversion; whether he suffered adverse employment action when Ferguson was converted and; whether similarly situated individuals outside of his protected class were treated more favorably. The question of whether Whitman was qualified for the position is dispositive. *See Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 675 (9th Cir. 1988) (finding plaintiff's ADEA claim time barred and alternatively noting that he failed to show that he was qualified).

In this particular employment context, qualified means both having the training and experience necessary to fill the position, and being eligible for noncompetitive promotion. Whitman's chief complaint is that he was qualified for the position and was not given the opportunity to bid for it because Ferguson was noncompetitively converted.

In 1977 President Carter issued Executive Order 12015. The Order provides:

> The appointment of a student to a position in a career-related work-study program may be converted noncompetitively to a career or career-conditional appointment if the student:

ORDER

> (a) has completed within the preceding 120 days an educational program that meets the provisions established by the Civil Service Commission;
> (b) has satisfied all course requirements leading to completion of the related curriculum at an accredited school;
> (c) is recommended for such an appointment by the employing agency in which the career-related work was performed; and,
> (d) satisfies such other requirements and conditions as the Civil Service Commission may prescribe for career or career-conditional appointment of an individual in career-related work-study programs.

Exec. Order No. 12,015, 42 Fed. Reg. 56,947 (Oct. 26, 1977). The FAA adopted this promotion policy. *See* Docket No. 17, Ex. H at 4–6, D at 2. The FAA's personnel regulations bestow selecting officials with the "authority to determine whether permanent internal assignments will be filled competitively or non-competitively in accordance with this policy. They may also determine the method of identifying or soliciting candidates." *Id.*, Ex. N at 2.

Ferguson apparently met all of the qualifications for student noncompetitive promotion and was a highly desirable potential employee. *Id.*, Ex. E at 38–39. Whitman is a veteran who was employed by the FAA as a Flight Data Specialist for many years. Whitman earned a degree from the University of Alaska, Anchorage in computer science. *Id.*, Ex. E at 111. In early 1999 Whitman applied for a computer specialist position with the FAA and was considered for the position. *Id.*, Ex. F. However, he was not selected due to "lack of knowledge." *Id.*, Ex. I. When he applied again he was found to lack the specialized experience necessary for the position. *Id.*, Ex. G. Given these findings, it is highly suspect that Whitman was qualified for the position Ferguson was converted to, given his lack of knowledge and experience.

In addition to arguing that he was professionally qualified for the position, Whitman avers that due to his veteran status he was eligible for noncompetitive promotion. Docket No. 18 at 8–9. The Veterans' Readjustment Appointment Program ("VRA") seeks to promote the hiring of veterans by federal agencies. 38 U.S.C. § 4214; *see also* Docket No. 22, Ex. W. The Office of Personnel Management is charged with prescribing regulations implementing the VRA. 38 U.S.C. § 4214(b)(1). The Office of Personnel Management has provided guidance on accepting VRA applications in Federal Personnel Manual Letter ("FPM") 307-17. FPM 307-17 states:

> (7) Agency selecting officials have broad discretion under the personnel laws to hire from several appropriate sources of qualified candidates. Eligibles with noncompetitive

ORDER

> appointment eligibility under a special hiring authority, such as the VRA program, are one such source. There are two categories of VRA candidates:
> a) Applicants from outside the Federal Service. We strongly encourage agencies to consider VRA applicants. . . . Unless an agency's policies require otherwise, agencies may accept VRA applications whether or not they have issued a job announcement for the position. . . .
> b) Current agency employees. Employees serving under the VRA have the same promotional opportunities and are subject to the same requirements as other employees under an agency's merit promotion plan.

Docket No. 22, Ex. V at 2. Thus, where a veteran is employed by an agency and thereafter seeks promotion, he or she is not eligible for noncompetitive promotion. *Id.* As a longtime employee of the FAA, Whitman's veteran status did not make him eligible for noncompetitive conversion. Even if his professional training and experience did qualify him for the position, Whitman was not qualified in the sense that he was ineligible for noncompetitive promotion.

Furthermore, Whitman did not apply for the position or notify anyone of his interest in being converted to the position. Nonetheless, he argues that the FAA's stated reasons for promoting Ferguson are all pretexts in an attempt to cover up a practice of age discrimination. Following this argument to its logical conclusion, the only way for the FAA to avoid acting discriminatorily on the basis of age would be to *sua sponte* offer the position to Whitman before offering it to Ferguson. While discrimination based on age is never an acceptable employment practice, employers are not required to offer positions to the oldest potential candidate, then the next oldest, then the next, on down the line in order to avoid age discrimination. Where, as here, an agency promotes someone noncompetitively in accordance with personnel policies and does not offer the job to an older long-time employee who has not expressed interest and is not otherwise eligible for noncompetitive promotion, age discrimination has not occurred. In fine, Whitman has not carried his burden of making out a prima facie case that he was discriminated against on the basis of age when Ferguson was noncompetitively converted.[2] Partial summary judgment will therefore be granted.

---

[2] It is true that the ALJ initially found that Whitman made out a prima facie case of discrimination before continuing on to find that there was no discrimination. Docket No. 18, Ex. J at 3. In making the initial finding, the ALJ cited to the facts that (1) Ferguson was appointed at twenty-nine years of age, (2) Ferguson was appointed noncompetitively, and (3) the position was not posted for all interested applicants. It does not appear that the *McDonnel Douglas* framework was used to

ORDER

**IT IS THEREFORE ORDERED:**

Defendant's motion to dismiss Whitman's retaliation claims, demand for jury trial and demand for compensatory damages, **Docket No. 10**, is **GRANTED**. Defendant's motion for partial summary judgment, **Docket No. 17**, is also **GRANTED**. Only Whitman's claims of age discrimination relating to the denial of certain detail positions remain.

Dated at Anchorage, Alaska, this 12th day of July, 2005.

_____
JAMES K. SINGLETON, JR.
United States District Judge

A04-0018--CV (JKS)   on 7-13-05
-------------------------------------------
✓ S. LINDQUIST (US-ATTY)
✓ T. WHITMAN

---

make this determination, nor does it appear that Whitman produced evidence of discriminatory intent.

ORDER